# Dawson v. Higgins.

### Trover for Conversion of Horse.

1. *Statutory lien for advances to make crop.* — To constitute a statutory lien for advances to make a crop (Rev. Code, § 1858), the language of the statute must be strictly pursued, and it must " be declared, in a written note or obligation for the advance, given by the person to whom such advance is made, that the same was obtained by him, *bonâ fide*, for the purpose of making a crop : " a recital in the note, and in the accompanying conveyance of the crop, in these words, " which advances were made me to enable me to make a crop the present year," is not sufficient.

2. *Mortgage of crop to be grown, for advances.* — A written contract in the form of a mortgage, which purports to have been made to secure a promissory note given for advances to make a crop, and conveys the crop to be grown, with other personal property, but does not contain the words necessary to constitute a statutory lien (Rev. Code, § 1858), is nevertheless valid and operative as a mortgage of personal property, and takes effect, as against subsequent purchasers of the property, from the date of its admission to record.

APPEAL from the Circuit Court of Chambers.
Tried before the Hon. L. B. STRANGE.

RICHARDS & FALKNER, for appellant.

C. D. HUDSON, *contra.*

PETERS, C. J. — This is an action of trover for the conversion of a horse. On the trial in the court below, the plaintiff took a nonsuit, and reserved the question in controversy by bill of exceptions ; and he now moves here to have the nonsuit set aside, and for a new trial. Rev. Code, § 2759.

The evidence incorporated into the bill of exceptions shows, that on the 26th day of March, 1868, one Thomas A. Harris (colored) executed and delivered to the plaintiff, Dawson, his promissory note in the words and figures following : " On or before the first day of November next, I promise to pay W. P. Dawson, executor of E. Bradford, deceased, or bearer, four bales of cotton, middling, for advances made me to enable me to make a crop the present year, value received, March 26th, 1868 ; " which was signed by said T. A. Harris, who, at the same time, also made and delivered to said Dawson a contract in writing, in these words : —

" The State of Alabama, } Know all men by these presents,
    Elmore County. } that I, Thomas A. Harris (colored), for and in consideration of the sum of two hundred and fifty dollars to him in hand paid, do bargain, and sell, and convey, unto W. P. Dawson, executor of E. Bradford, deceased, his heirs, and assigns, my entire crop, and my entire interest in the rents of crop, to be planted and grown on the

place known as the ' Cook place'; also, one bay horse, named ' John'; warranting and defending the right and title and claim, from all claims whatever. *Provided*, nevertheless, that, whereas the said Thomas A. Harris has this day made his certain promissory note, due and payable to Wm. P. Dawson, executor of E. Bradford, dec'd, or bearer, on or before the first day of November next, for four bales middling cotton, to be gathered, and ginned, and packed in good order, in consideration of said advance of two hundred and fifty dollars; which advance was made to me in one horse and corn, &c., to enable me to make a crop on said place, which crop I was unable to make without such advance; said cotton to be delivered in five miles of my present residence, and for the better securing the payment of said note, this mortgage conveyance (is) made. Now, if the said Thomas A. Harris aforesaid shall, in good faith, deliver the aforesaid described four bales of cotton, agreeable to the tenor thereof, that this mortgage conveyance to be void; otherwise, the said W. P. Dawson, executor of E. Bradford, deceased, or his assigns, are hereby authorized and empowered to seize and take possession of the aforesaid crop, rents, and horse, and, by giving thirty days' notice, to expose to sale to the highest bidder for cash, on the premises, said crop, rents, and horse; and after paying off the value of said four bales cotton at the time when due, and all legal costs and expenses, to pay the overplus (if any) to the said T. A. Harris. In witness whereof, the said Thos. A. Harris do hereunto set his hand and seal, this 26th day of March, A. D. 1868.

" T. A. HARRIS." [SEAL.]

This instrument was attested by two witnesses, and it was filed in the office of the judge of probate of said county of Elmore for record, and recorded, as required by law, on the 22d day of July, A. D. 1868. This conveyance, and the promissory note above set out, were offered in evidence by the plaintiff, on the trial by the jury in the court below, without objection. It was also shown, that this instrument, and said note, were given to secure the payment of said advances to enable said Harris to make a crop in Elmore county, where he resided, in the year 1868. The testimony tended to show, also, that about the month of July, or August, 1868, Harris carried off the horse, and failed to bring him back to Elmore county; and that the horse was afterwards found by the plaintiff, in July or August, 1869, in Chambers county in this State, in possession of the defendant. The horse was demanded before suit brought from the defendant, by the agent of the plaintiff; and it was shown that he was worth about $150.00. The defendant proved that he had swapped with Harris for the horse, in July or August, 1868, and claimed it as his own under this swap.

[Dawson v. Higgins.]

On this evidence, the court charged the jury, "that the instrument above set out created a statutory lien under the statute of this State; and that unless said instrument was recorded within sixty days after its execution and delivery, then the lien was lost, and the plaintiff could not recover from a bonâ fide purchaser for valuable consideration." To this charge the plaintiff excepted. The plaintiff then asked the court to charge the jury, in effect, that the instrument above set out "created a lien by contract, and was not such a lien as that described in sections 1858 and 1859 of the Revised Code, which was forfeited and lost if the instrument was not recorded within sixty days under the statute." This charge was refused, and the plaintiff again excepted, and took a nonsuit.

1. The charge given was simply the reverse of the charge asked by the plaintiff. They involve the same question. That is, what it takes to constitute a lien for advances to make a crop under our statute. This is an important enactment, and the language used in defining its provisions is precise and clear. It requires that it "*shall be declared in a written note or obligation* for the advance, given by the person to whom such advance is made, *that the same was obtained by him, bonâ fide*, for *the purpose of making a crop*, and that without such advance it would not be in the power of such person to procure the necessary team, provisions, and farming implements, to make a crop." Rev. Code, § 1858. The words in italics, above cited, are required by the Code to be incorporated into the note or obligation for the advance. This requisition is imperative. We cannot presume that it was required to be made merely to be omitted in practice. This would have been nugatory and useless. Such a presumption is not to be indulged. This requisition is not complied with in the instrument above set forth. It is not, then, strictly, a statutory note or obligation, creating a statutory lien. It is not necessary to discuss the reasons for this requisition. It is enough for the court to know that it exists, and to see that it is enforced. In this view of the statute, the charge of the court, which was objected to, was erroneous. It should have been refused.

2. The instrument above set out is not a contract which the law forbids. It has all the elements of a mortgage, and as such it may be enforced as a mortgage. But it cannot be enforced as a statutory lien on the crop and stock of another, for advances to assist in making a crop. Rev. Code, § 1860. And it cannot be enforced as landlords enforce their liens for collection of rents, as could be done in case it were a note or obligation creating a statutory lien. As a mortgage, the instrument was recorded on the 22d day of July, 1868. From this date it was operative as a mortgage of the personal property

conveyed in it. Rev. Code, § 1561; *Hardaway* v. *Semmes*, 38 Ala. 657, and cases there cited. The refusal of the charge asked was, for this reason also, error. The charge asked ought to have been given.

The judgment of the court below is reversed, and the cause is remanded for a new trial.